MEMORANDUM. It having been provided by *St.* 1837, *c.* 78, that the number of justices of the Supreme Judicial Court shall be five instead of four, CHARLES A. DEWEY, Esquire, of Northampton, was appointed a justice of this Court on the 25th of May, 1837, and on the 24th of June he took his seat on the bench.

## TIMOTHY H. CARTER *versus* CALVIN WILLARD.

If goods in the possession of a lessee are sold, and a bill of parcels delivered to the vendee, and notice of the sale given to the lessee by the parties with a request that he will hold the goods for the vendee, this constitutes a valid constructive delivery of such goods, as against a subsequently attaching creditor of the vendor, although the lessee do not consent so to hold them.

But the mere delivery of the bill of parcels, without giving notice of the sale to the lessee, is not sufficient as against a subsequent attachment by a creditor of the vendor.

CASE against the defendant as sheriff of the county of Worcester, for an alleged tortious act of one of his deputies, in taking and carrying away the property of the plaintiff.

Carter
*v.*
Willard.

The cause was tried before *Shaw* C. J.

The plaintiff claimed the property in question, being the furniture of a hotel and of a house known by the name of the Mansion House, in Lancaster, and the carriages, horses, &c. of a livery stable, under several bills of sale from Ferdinand Andrews, the surviving partner of the firm of Carter & Andrews. These bills of sale were in the common form of a bill of parcels, without seal, and were executed in Boston. The bills of sale of the furniture were dated on the 1st of July, 1833, and that of the stock of the livery stable, on the 29th of January, 1834.

The defendant justified under several attachments made upon the chattels as the property of Andrews.

It appeared, that at the time when the furniture in the hotel, and also when the stock of the livery stable were sold to the plaintiff, the hotel and livery stable were in the possession of Samuel P. Damon, under an agreement made by him, on the 1st of April, 1832, with Carter & Andrews, then the owners, in which it was stipulated, that he should carry on the business of the hotel and stable for one year, and receive a certain share of the profits for his compensation; and that in November 1833, Andrews conveyed the hotel and stable to the plaintiff, by deed duly acknowledged and recorded.

To prove a delivery of the property in the hotel and stable, under the bills of sale, to the plaintiff, evidence was offered tending to show, that on or about the 1st of February, 1834, two or three weeks before the attachments were made, a written notice, signed by the plaintiff, was delivered by Andrews to Damon, accompanied with a verbal declaration to the same effect, informing him of the sale and requesting him thenceforward to hold the property for the plaintiff; and that Damon neither consented nor refused so to do, expressly, but continued in possession under the former agreement until the attachments were made.

In regard to the furniture of the Mansion House, no delivery thereof was made, unless the delivery of the bill of sale, and payment of the consideration, constituted a good symbolical delivery; but it appeared, that the Mansion House was then occupied by Mrs. Southwick, as a boarding-house, under a

Carter
*v.*
Willard.

lease from Carter & Andrews, and that she had the use and possession of the furniture ; and no evidence was introduced of any notice being given to her of the sale of the furniture to the plaintiff, until after it had been attached.

The jury were instructed, concerning the property in the hotel and livery stable, that if they were satisfied that, at the time of the sale, it was, by agreement, under the temporary control, management and possession of Damon, that notice of the sale was given to him both by the vendor and vendee, and that he was requested to hold it for the use of the plaintiff, it was not necessary that Damon should express his assent so to hold the property ; but that there was a good constructive delivery if he did not, on receiving such notice, express his dissent to hold the property for the plaintiff; and that such delivery, being made before the attachment, sufficiently vested the property in the plaintiff.

In regard to the furniture of the Mansion House, it was ruled, that there was not a sufficient delivery of it, actual or constructive.

The jury found a verdict for the plaintiff, for the value of the property in the hotel and stable.

If the Court should be of opinion, that there was not a sufficient delivery of the property in the hotel and livery stable, the verdict was to be set aside, and a new trial granted ; and if they should be of opinion, that there was a sufficient constructive delivery of the furniture of the Mansion House, to vest the property in the plaintiff, the agreed value thereof, with interest, was to be added to the damages found, and the verdict to be amended accordingly.

The case was argued in writing.

*J. Willard*, for the defendant. If Damon was the lessee of Carter & Andrews, they could not have disturbed him in his possession ; and if they could not, certainly no third person claiming under them could do so. If, however, he was not tenant, but agent, his rights were substantially the same, and so long as he fulfilled his contract, he could not be disturbed ; nor, being an agent for a particular purpose, under a special agreement with the vendors, could he, without his consent, be constituted an agent for another and different purpose. Unless

the party who has the rightful possession of property, consents, on notice of a sale, to hold it for the vendee, there is no good constructive delivery; and such consent is not to be implied from the fact that an express dissent is not proved. *Lucas* v. *Dorien*, 7 Taunt. 279 ; *Zwinger* v. *Samuda*, 7 Taunt. 265 ; *Wilkes* v. *Ferris*, 5 Johns. R. 335 ; Chitty on Contr. 115 ; *Knowles* v. *Horsfall*, 5 Barn. & Ald. 134. The refusal of Damon to deliver possession, might have rendered him liable to an action on the part of the plaintiff, but still it would have shut out the plaintiff's possession, and let in the claim of an attaching creditor. *Bentall* v. *Burn*, 5 Barn. & Cressw. 423 ; *Barney* v. *Brown*, 2 Vermont R. 374 ; *Harding* v *Janes*, 4 Vermont R. 462 ; *Whitehouse* v. *Frost*, 12 East, 614. If Carter & Andrews, after the alleged notice, had sold this property to a third person, and had actually delivered it to him for a valuable consideration, he would have held it in preference to the plaintiff. *Lanfear* v. *Sumner*, 17 Mass. R. 110.

There is no case, it is believed, where the mere silence of a party who is in the possession of property, is construed into an assent to hold it for the vendee. The consent must be positive in the terms, or such a line of conduct must be pursued, as will be equivalent to a consent ; and evidence of dissent, however slight, should operate as a refusal.

With regard to the furniture of the Mansion House, which was in the possession of a lessee to whom no notice was given, it is sufficient to cite *Lamb* v. *Durant*, 12 Mass. R. 54 ; *Lanfear* v. *Sumner*, 17 Mass. R. 110.

*Rand* and *Fiske*, for the plaintiff. The furniture of the hotel and the stock of the livery stable were on the plaintiff's premises ; and whether Damon is to be regarded as tenant or agent, Carter & Andrews had not, at the time when notice of the sale was given to Damon, either the title to the property or the possession. If the possession had not passed before, it passed by the execution and recording of the deed of the real estate. *De Ridder* v. *M'Knight*, 13 Johns. R. 294 ; *Ludlow* v. *Heard*, 19 Johns. R. 218 ; *Haskell* v. *Greely*, 3 Greenleaf, 427 ; *Brinley* v. *Spring*, 7 Greenleaf, 252 ; *Addis* v. *Baker*, 1 Anstr. 222 ; *M'Calla* v *Bullock*, 2 Bibb, 289 ; *Atkinson* v. *Maling*, 2 T. R. 462 , *Beaumont* v. *Crane*, 14

Mass. R. 400 ; *Manton* v. *Moore*, 7 T. R. 67 ; *Chapman* <span style="float:right">Carter<br>*v.*<br>Willard.</span>
v. *Searle*, 3 Pick. 45 ; Just. Inst. *lib.* 2, *tit.* 1, § 43.

No actual delivery could take place at the time of the sale ; and if such a delivery could have been made, it would have been a useless ceremony, as the goods were intended to remain where they then were, in compliance with the contract with Damon.

Damon's assent, if it were necessary, was to be inferred from his conduct and declarations ; and if he had said nothing, or did not dissent, his assent must be presumed.

But his assent was entirely unnecessary ; for whether he were to be regarded as tenant or agent, he could not prevent a valid transfer by Carter & Andrews of their interest to the plaintiff.

As to the property in the Mansion House, the delivery of the bill of sale was a symbolical delivery of the goods, if any delivery was necessary ; and a symbolical delivery is sufficient even against creditors. *Gardner* v. *Howland*, 2 Pick. 599 ; *Wilkes* v. *Ferris*, 5 Johns. R. 335 ; *Chapman* v. *Searle*, 3 Pick. 45 ; *Tuxworth* v. *Moore*, 9 Pick. 347 ; Brown, 392 ; Poth. Contr. du Vente, *No.* 313.

Carter & Andrews had merely a reversionary interest expectant upon the termination of the lease, and of this no delivery could be made. A transfer of a chose in action is valid, although an attachment intervene even before notice is given to the debtor. *Wakefield* v. *Martin*, 3 Mass. R. 558 ; *Dix* v. *Cobb*, 4 Mass. R. 508 ; *Ammidon* v. *Wheelock*, 8 Pick. 473. For a like reason, a transfer of a reversionary interest is good, although an attachment be made before notice to the person in possession.

Putnam J. delivered the opinion of the Court. The <span style="float:right">*March 13th.*</span> plaintiff claims the goods and chattels as a purchaser ; and the question is, whether what was done was equivalent to actual delivery ; or, in other words, whether there was a legal constructive delivery of the property.

By the common law, a sale of goods and chattels is sufficient to transfer the property, as between the vendor and vendee, without any delivery. But there must be a delivery in order

1*

to transfer the complete dominion to the vendee ; otherwise, a subsequent *bonâ fide* purchaser without notice, or an attaching creditor of the vendor, may take and hold the property. We propose to consider the question, first, as it relates to the property in the hotel and livery stable, and then, as it relates to the property in the Mansion House.

Was there a sufficient constructive delivery of the property in the hotel and livery stable, which were in the occupation of Damon ?

There could not be an actual delivery, without violating the rights of the lessee. For he had a right to occupy the real estate, and to use and possess the furniture and other personal estate, until the termination of the lease. But there are various modes adopted by which a constructive delivery may be effected, having regard to the kind of property and its condition or situation. The property may consist of articles which are very bulky and heavy, as of blocks of stone, timber and other things, which are incapable of manual tradition. The case of *Jewett v. Warren,* 12 Mass. R. 300, furnishes an example. In that case, which relates to the sale of logs in the boom of a river, the vendor directed a witness to deliver them to the vendee ; and this was effectually done by showing them to him. The possession was taken by the eyes. So in *Manton v. Moore,* 7 T. R. 67, where a quantity of timber and other materials were lying on the premises of the vendee, the making of a bill of sale to the vendee and delivery of a half-penny in lieu and in name of possession, was held to be a sufficient delivery. In this case, as in that first cited, the property was present before the parties. The delivery of the halfpenny could be considered in no other view than as an act of the parties indicating the intent on the part of the vendor, to give, and on the part of the vendee, to receive possession according to the sale. This last case would come within another rule, that sufferance will in some cases amount to a constructive delivery ; as, if the goods were lent to or deposited with one who afterwards should become the purchaser, the consent of the vendor, that the vendee should retain them for his own use, would establish the title.

This is a practical and very convenient rule, borrowed from

Carter<br>*v.*<br>Willard.

the civil law. " *Interdum, etiam sine tradition.*, *nuda voluntas domini sufficit ad rem transferendam ; veluti si rem, quam tibi aliquis commodaverit, aut locaverit, aut apud te deposuerit, postea aut vendiderit tibi, aut donaverit, aut dotis nomine dederit ; quamvis enim ex ea causa tibi eam non tradiderit, eo tamen ipso, quod patitur tuam esse, statim tibi acquiritur proprietas, perinde ac si eo nomine tibi tradita fuisset.*" Inst. *lib.* 2, *tit.* 1, § 43. And it would seem an act of great and useless absurdity, that the parties should go through the ceremony of redelivering the property to the vendor, to the end that he should replace it in the hands of the vendee, where it was already. Ayl. Civ. Law, *lib.* 3, *tit.* 3, *p.* 297. And if the party had obtained the possession without any just means, the mere will of the true owner that the thing shall be his, is sufficient. " *Si velit dominus proprietalis quod sua sit, sua erit, quamvis possessio apud verum dominum non fuerit ; fingitur enim per voluntatem domini quod res quasi ex eo, et per manum suam, ad detentorem pervenerit, possessio et dominium.*" Bract. *lib.* 2, *c.* 18, *fol.* 40, 41. But it would not follow that the mere naked will of the owner should transfer the property which was in his possession, to the vendee. There must be a delivery.

In *Manton* v. *Moore*, before cited, the court say, that upon the transfer of the property the law referred the possession to the vendee in whom the possession was before. So in *De Ridder* v. *M'Knight*, 13 Johns. R. 294, where a set of gristmill stones were left by the vendor on land of the vendee and in his possession, to be used as the vendee should please, it was held to be a sufficient delivery.

Now it is contended for the plaintiff, that Carter & Andrews conveyed the hotel and livery stable to him and the Mansion House also, in 1833, before the attachment was made, and that the furniture and property afterwards sold being upon the premises of the plaintiff, passed without a delivery, according to the principles in the cases last before cited. But we think the facts will not warrant the argument. The plaintiff bought merely the right in equity to redeem the real estate, and he had not made any entry into the same, nor had the actual possession thereof, when the bill of parcels of the

goods and chattels was made to him.  So the law could no. refer the possession of the goods and chattels to the plaintiff, because he had not the possession of the real estate when the bills of parcels were made.

The reason upon which this doctrine of delivery rests is twofold : 1. That the vendee may have the entire control o the property ; and 2. That there shall be some notoriety attending the act.

The delivery of the keys of the warehouse wherein the goods are deposited, is a well known and familiar instance of a constructive delivery.  They give to the vendee the means of controlling the property.  This mode is derived from the civil law *de traditione clavium*.  Inst. *lib.* 2, *tit.* 1, § 44 And the property is vested in the vendee as soon as the keys are delivered.  But a qualified delivery of this kind (says Mr. Cullen) " is not considered on the footing of a delivery *by symbol* merely, which certainly would not do, but as being the delivery of that by which the party may come at the property, as furnishing him with the means of reducing it into possession, as if there had been a transmutation of the possession."  Cul len on Bankruptcy, 304.

This delivery of the keys of the store where the goods are, is potential and effectual ; but a delivery of a straw as and for the goods themselves, when not present, would seem to be vain and nugatory.  *Ward* v. *Turner*, 2 Ves. sen. 243.

Where the goods are in the hands of a custodier or third party, to be kept for the use of the vendor, a notice to such keeper by the parties, of the sale, is held to be a valid constructive delivery.  Thus in *Tuxworth* v. *Moore*, 9 Pick. 347 where a person had a horse at a livery stable, and sold it to the plaintiff, and both the vendor and vendee informed the livery stable keeper of the sale, it was held to be a valid transfer against the creditor who afterwards attached it as the property of the vendor.  This is a case somewhat analogous to the one at bar.  And if the vendee, who has agreed for the purchase of goods, desires the vendor to keep them for the vendee, and the vendor accepts an order for that purpose, these transactions make a good delivery.  *Elmore* v. *Stone*, 1 Taunt. 547.

So in *Hollingsworth* v. *Napier*, 3 Caines's R. 182, the order upon the warehouse keeper to deliver the goods to the purchaser, was held to be a good constructive delivery, and the vendor had no right to stop the goods as being *in transitu.*

There is an immense number of cases upon this subject, each however depending upon the particular circumstances attending it, where it has been held, that the property vests without an actual or manual tradition.   As, if the vendee, with the consent of the vendor, should mark the goods, with intent to designate them for his own ; or, if the vendor should direct the vendee to take the goods away, and the vendee should put a keeper over them.   Ayl. Civ. Law, 298.   So, if the vendee, with the knowledge and assent of the vendor, should sell the goods and deliver the same to a third person.   *Stoveld* v. *Hughes*, 14 East, 308 ; *Chaplin* v. *Rogers*, 1 East, 492. See also the very able summary of this branch of the law in 2 Kent's Comm. (3d ed.) 491 *et seq.*

There are cases, where the delivery of documentary evidence of property, so called, is considered as a delivery of the goods themselves ; as, where there is a bill of lading indorsed and delivered to the vendee.   *Rice* v. *Austin*, 17 Mass. R. 205.

This rule applies to the sale of ships at sea, or not at the place where the sale is made.   The delivery of a bill of sale and muniments of the property, is an effectual delivery, subject indeed to be defeated by the omission of the vendee to take the actual possession as soon as he can be reasonably expected to do it.   And if he does take such possession, he will hold against the assignees of the bankrupt vendor, and also against the attachments of the creditors which were made after the bill of sale and before the obtaining of the actual possession.   *Portland Bank* v. *Stacy*, 4 Mass. R. 663 ; *Atkinson* v. *Maling*, 2 T. R. 462 ; *Putnam* v. *Dutch*, 8 Mass. R. 290 ; Abbott on Shipping (Story's 2d ed.) 10 ; *Badlam* v. *Tucker*, 1 Pick. 389 ; Cullen on Bankruptcy, 304, 305.

So of the delivery of the receipt or acknowledgment of one who has goods on storage for another.   *Chapman* v. *Searle*,

Carter
*v.*
Willard.

Carter
v.
Willard.

3 Pick. 45 ; *Wilkes* v. *Ferris*, 5 Johns. R. 385 ; *Caldwell* v.
*Ball*, 1 T. R. 205 ; *Harman* v. *Anderson*, 2 Campb. 243 ;
*Ryall* v. *Rolle*, 1 Atk. 170.   So where the purchasers left an
order from the vendor with the wharfinger, to deliver the goods,
it was held that he was bound to keep the property for the use
of the vendee, subject indeed to any lien which the wharfinger
might have upon the goods, but free from any claim of the
assignees of the vendor.

So, in the case at bar, the notice to Damon, of the sale to
the plaintiff, is not to affect Damon's right to use the goods
according to his prior contract with the vendor.   He has a
right, as he said, " to live up to his bargain."   But after notice
he was bound to hold the property for the use of the vendee,
subject indeed to his own prior right of occupying the same
during the residue of the term of the lease.

So dock warrants, which pass by assignment and delivery,
represent the goods themselves.   *Lucas* v. *Dorien*, 7 Taunt.
278.   And the holder shall recover the goods notwithstanding
there had not been any notice to or assent by the dock com-
pany.   The warrant, indorsed and delivered, represented the
goods and vested the property in the vendee, as if there had
been an actual delivery.   *Zwinger* v. *Samuda*, 7 Taunt. 265.
So, in the case at bar, Damon's assent to the sale was not neces-
sary.   He had no legal right to prevent the vendor from trans-
ferring the right which he had to the goods, subject to Da-
mon's prior right.   If this were otherwise, it would enable
one man to exercise a power which he does not possess, over
the property of another, to whom the right of disposal belongs.
It would fetter and restrain the owner in regard to the benefi-
cial use and appropriation of his property, and be greatly pre
judicial to individuals as well as to the community.

But, in the case at bar, notice of the transfer was in fact
given to Damon both by the vendor and the vendee ; and the
vendee treated the property as his own.   He directed it to be
held for his own use after the termination of Damon's right
under the lease.

We are all satisfied that the bill of sale or parcels, and notice
of the same by the parties to Damon, as stated in the report,

Carter
v.
Willard.

as to the property in the hotel and livery stable, do constitute a valid constructive delivery of the same, and that the plaintiff has a right to recover damages for the taking of the same.

But in regard to the furniture in the Mansion House, which was in the possession of Mrs. Southwick, there was no notice of the sale given to her, nor any act done which can be construed to be a delivery, unless the giving of the bill of parcels shall of itself be considered as a delivery of the goods and chattels therein said to be sold. Now it cannot be considered as documentary evidence, for bills of parcels may be multiplied indefinitely ; but not so the documentary papers properly so called.

This part of the case comes within the decision of *Lanfear* v. *Sumner*, 17 Mass. R. 110, cited at the bar. There the goods, at the time of the sale at Philadelphia, were supposed to be at sea, but were in truth at Boston ; and they were attached at Boston as the property of the vendor, before the vendee obtained possession of them. The vendee claimed under a bill of parcels ; and there was no bill of lading, invoice, or any documentary evidence ; but, as in the case at bar, a mere bill of parcels was made and delivered to the vendee ; which was held to be good as between the parties, but not complete as against the creditors of the vendor, interfering by an attachment before delivery.

It has been contended for the plaintiff, that this doctrine is not consistent with *Badlam* v. *Tucker*, 1 Pick. 389, and *Putnam* v. *Dutch*, 8 Mass. R. 267, in which cases the title of the vendee was held to be valid notwithstanding an attachment was made by a creditor of the vendor, before the vendee obtained the possession. But the sale of ships and merchandise at sea, is governed by other rules than the sale of goods and chattels on shore, of which delivery can be made, and forms an exception to the general rule, that delivery must be made before the sale is valid as to the creditors of the vendor. It is for the benefit of navigation and commerce ; and public policy requires, that by the delivery of the bill of sale of the ship, and of the documentary evidence of the merchandise, the property should instantly vest in the vendee, subject however to be divested, if the vendee should be guilty of laches in

not obtaining actual possession in a reasonable time. In those cases there were no such laches ; and the vendee's title was held good against the attachment of the creditor of the vendor, which was made before the possession was obtained ; which possession, although taken subsequently to the attachment, related back to the time when the sale was made, and put the vendee upon the same ground as he would have been if actual possession had been given at the time of the sale.

The case of *Gardner* v. *Howland*, 2 Pick. 602, it is said by the plaintiff's counsel, is opposed to *Lanfear* v. *Sumner*, and the delivery of the bill of sale was held to be a valid symbolical delivery of the goods. But in that case the vendor delivered to the vendee, the duplicate invoice of the cargo, authenticated by the master. It was the only documentary evidence which the vendor had, and it was properly held to be a good symbolical delivery of the cargo. But in *Lanfear* v. *Sumner*, as we have before said, there was a mere bill of parcels, without any documentary evidence whatever, and no delivery before the attachment.

It has been contended for the plaintiff, that there was no necessity for any delivery in the case at bar, as the vendor had merely a reversionary interest expectant upon the termination of the lease ; and so the property would pass in virtue of the bill of parcels, without any other delivery ; just as a chose in action or incorporeal hereditament would pass by the delivery of the instrument purporting to transfer the same. We think this argument is not well founded. The case presents the common qualification of property in chattels, where one has the present right of possession, and another the right of property ; each has a qualified property and remedy. But the sale must be accompanied by a delivery, in order to transfer the complete dominion.

So far as the case regards the furniture in the Mansion House, we think it to be clear for the defendant. If we were to hold, that the delivery of the bill of parcels should be considered as a symbolical delivery of the goods and chattels specified therein, it would be an effectual dispensation of the rule of law which requires a delivery as an essential requisite in the sale of goods and chattels.

The judgment is to be for the plaintiff, according to the verdict, for the value only of the property in the hotel and stable.